184

## Levengood et al. v. Eisaman et al.

*Joseph L. Prince* and *Willis F. Daniels*, for plaintiffs.
*Leonard A. Talone*, for defendants.

DANNEHOWER, J., June 5, 1939.—This is an appeal by plaintiff milk dealer from an order of the Pennsylvania Milk Control Commission, dated March 7, 1939, refusing a milk dealer's license for the current year from May 1, 1938, to April 30, 1939, on the ground of underpayments to producers in the amount of $2,661.37 for milk purchased during the months of May, June, and July 1937.

In accordance with the Milk Control Law of April 28, 1937, P. L. 417, art. IX, the appeal was argued before the court on May 10, 1939, on appeal petition, answer thereto filed by the commission, and the record certified

to the court by the commission. The petition alleges five objections to the action and decision of the commission as follows:

"(*a*) In basing its refusal on the fact that your petitioner underpaid its producers $2,661.37 for milk purchased during the months of May, June and July, 1937, and further erred in not permitting your petitioner a receiving-station differential, as is set forth in the general order under which your petitioner operated during those months.

"(*b*) The commission further erred in not finding that the plant where milk is received by your petitioner and then transported to another plant from which it is distributed to the public was and is a receiving station.

"(*c*) In refusing to grant a continuance of the hearing until such time as your petitioner could be represented by counsel.

"(*d*) In issuing an order refusing an application for a license rather than dismissing the citation.

"(*e*) In basing its underpayments upon the prices set forth in the general order promulgated to be in effect during the months of May, June and July of 1937, for the reason that such order is illegal, unconstitutional, and void not having been promulgated in accordance with the law applicable to the promulgation of the Milk Control Commission's general orders, in that it did not afford your petitioner, or the average efficient milk dealer operating in the territory of your petitioner, a fair return upon his, or their, investment, and was not promulgated upon the evidence placed in the record at the hearing for the purpose of promulgating such general order."

These allegations are denied in the answer.

Directing our attention to (c), that the commission erred "in refusing to grant a continuance of the hearing until such time as petitioner could be represented by counsel", it is elsewhere alleged in the appeal petition, in paragraph 5:

"That John J. Snyder, a member of the Milk Control Commission, conducted a hearing in the commission's offices in the City of Harrisburg, on July 28, 1938, at 11 a.m. and did so without your petitioner being represented by counsel; and refused to continue the case until such time as counsel could arrive in Harrisburg, even though he was advised by a member of the bar of Dauphin County that counsel for your petitioner was on his way to Harrisburg but could not arrive until two o'clock of the same afternoon. Commissioner Snyder denied the request for a continuance until that time."

The answer avers thereto "that the Honorable John J. Snyder, member of the Milk Control Commission, did preside over a hearing at 11 a.m. on July 28, 1938, of which hearing legal notice in writing was given petitioner and application for continuance was denied."

The record reveals that on July 19, 1938, a registered letter was mailed to the Levengood Dairies, at Pottstown, Pa., containing a citation to appear before the Milk Control Commission at Harrisburg, Pa., on July 28, 1938, at 11 a.m. (D. S. T.), to show cause why the application for a milk dealer's license for 1938-1939 should not be refused because of underpayment to producers at the times required by the Milk Control Law, supra. This letter was received on July 20, 1938. The Levengood Dairies employed Willis F. Daniels, Esq., of Harrisburg, Pa., as their attorney. On July 27, 1938, after preparing the case for hearing, it became necessary for Mr. Daniels to go to Altoona on business, where he was detained. On the morning of July 28th, his associate applied for a continuance of the hearing from 11 a.m. until 2 p.m., in order that Mr. Daniels could come from Altoona to Harrisburg and represent his client at the hearing before the commissioner. This application for continuance from 11 a.m. until 2 p.m. was refused, and at 11:30 a.m. the commissioner proceeded to a hearing in the absence of Mr. Levengood and his attorney.

Shortly thereafter, Mr. Levengood and Mr. Law, his witness, appeared. The record shows:

"Commissioner Snyder: I have been endeavoring to coöperate with the industry with the hope of straightening out a lot of difficulties and dissensions, but the time has arrived when my generosity will have to cease, and appointments must be kept with this commission. I regret to take this stand. You, Mr. Levengood, have kept your appointment, but Mr. Daniels, your counsel has failed to appear. Now the commission is ready to proceed with its business. Yesterday we had a call from Pittsburgh from an attorney asking for a continuance, stating that he had to be in court in Pittsburgh, and today we receive word that he is in Altoona. We have witnesses here for this hearing. It costs in the neighborhood of $50 to bring in each witness, and I feel that I cannot continue this hearing in spite of the fact that a half hour before the hearing was scheduled Mr. Daniel's office called and stated that he is in Altoona and that he cannot be here until this afternoon. You must realize that the commission's appointments must be kept, and this is not the first instance, nor the second.

Mr. Levengood: But it is not our fault.

Mr. Snyder: I realize that and I regret that you won't have the advantage of counsel.

Mr. Levengood: When we received this notice we engaged counsel. We called him immediately and we called him again yesterday and said, 'you positively will be there?' He said, 'you get there one hour before the hearing, in my office.' When we got there, in his office, they said, 'we are trying to postpone the case until this afternoon.'

Mr. Snyder: I am very sorry.

Mr. Levengood: If I had known this I would have brought legal talent from our own town.

Mr. Snyder: It has come to the point of the straw that broke the camel's back. I have told Mr. Daniels that I am not going to postpone any more cases and I hope it has

the desired effect. He has been taking advantage of my good will continually for the past year and it must stop. There is no other way but by taking this drastic action. These are court appointments and they must be kept. We have gone the limit in extending Mr. Daniels every courtesy and for absolutely no reason whatever, simply the fact that he can't get up early this morning, and get in here, is no reason why this commission should be held up in their business for an entire day. It has cost us money to get our witnesses.

Mr. Levengood: I am not opposing you, I am simply stating our own side of the case. You put yourself in our position—he knows what this case is about and everything else.

Mr. Snyder: You are the unfortunate victim of circumstances.

Mr. Levengood: We have never caused you any trouble.

Mr. Snyder: That is true, and I say honestly I can name dozens of other dealers in this State that I would rather this would happen to than Levengood Dairies.

Remember it is going to cause you the inconvenience of taking an appeal to the Dauphin County Court if this case goes against you, but I am not to blame. You can put the blame where it belongs.

Mr. Levengood: I see your position. He should have been here.

Mr. Parnell: Mr. Biank.

Mr. Snyder: Are you Mr. Levengood's accountant, Mr. Lau? I would advise you to keep close track of this testimony. Probably you will be able to help Mr. Levengood as well as an attorney.

Mr. Lau: I make up the payroll."

Mr. Levengood and his accountant, Mr. Lau, in their testimony before the commissioner, and without counsel, endeavored to explain that they operated plants in Pottstown, Norristown, and Philadelphia, and if they had been allowed a receiving-station differential, as set forth in

the general order, no underpayment to producers would exist; also, that the plant in Pottstown, where milk is received and then transported to other plants where it is distributed to the public, was and is a receiving station. To explain these contentions intelligently, it is necessary for one to have a thorough knowledge not only of the Milk Control Law, but also of its many general rules, regulations and orders, classifications and accounting.

The Levengood Dairies and their counsel were under a tremendous handicap, because the appeal must be heard upon the record as certified to this court by the commission. And no additional testimony could be taken before the court.

After a careful review of the entire record, and considering that the hearing was held on July 28, 1938, and no order was made until March 7, 1939, by the commission; that the license year from May 1, 1938, to April 30, 1939, has already expired; that a continuance of the hearing for only three hours was requested owing to the engagement of counsel, which would not have unduly prejudiced the commission; that a most valuable license has been refused involving thousands of dollars worth of equipment, and affecting hundreds of customers, where the licensee was not represented by counsel; and believing that the licensee was prejudiced by his inability to intelligently explain the alleged underpayments and a credible explanation was omitted owing to the absence of counsel; and believing from the record that a different result would have been reached if counsel had been present, we are of the opinion that, under section 906 of the Milk Control Law, this is a proper case to remit to the commission for the taking of further testimony.

And now, June 5, 1939, for the foregoing reasons, it is ordered, adjudged, and decreed that the action and order of the commission of March 7, 1939, be reversed, and the record is remitted to the commission for the taking of further testimony.